## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| | : |
| PHILADELPHIA NEWSPAPERS, LLC, ET AL., | : |
| | : |
| DEBTORS. | : BANKRUPTCY NO. 09-11204 SR |

| | |
|---|---|
| PHILADELPHIA NEWSPAPERS, LLC, | : |
| | : |
| PLAINTIFF | : |
| VS. | : |
| | : |
| REVIEW PUBLISHING, L.P. | : |
| DEFENDANT. | : ADVS. NO. 09-264 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

## <u>Introduction</u>

Plaintiff, Philadelphia Newspapers, LLC ("Plaintiff"), commenced this adversary proceeding by filing a complaint ("Complaint") seeking to recover $530,929.72 plus interest which it contends is due and owing from defendant, Review Publishing, L.P. ("Review"), pursuant to the terms of an agreement ("Agreement"). Review filed an answer ("Answer") to the Complaint. In the Answer, Review included nine affirmative defenses and a counterclaim ("Counterclaim"). Plaintiff moves the Court to dismiss Review's ninth affirmative defense ("Ninth Defense") and its Counterclaim contending that Review is improperly attempting to setoff a pre-petition debt against a post-petition obligation pursuant to §553 of the Bankruptcy Code. Upon consideration, the

Court shall deny Plaintiff's motion to dismiss (the "Motion").

## Background

On or about March 31, 2003, Philadelphia Newspapers, Inc. and Review entered into the Agreement which had an initial term of two years.[1]  *Complaint* ¶1; *Answer* ¶1. *See Exhibit A to Complaint.*  At the expiration of the initial term, the Agreement automatically continually renewed "for consecutive one (1) year periods (each, a "Renewal Term")[.]"  *Id.* ¶5.

On February 22, 2009, Plaintiff as well as Broad Street Video, LLC, Philadelphia Media, LLC, PMH Acquisition, LLC, Broad Street Publishing, LLC, Philly Online, LLC, and PMH Holdings, LLC (collectively hereinafter "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.  Their bankruptcy cases are being jointly administered.

In March of 2009, at the conclusion of the Renewal Term, the parties agreed to continue their contractual relationship for an undetermined period of time under the terms and conditions in the Agreement.  *Complaint* ¶11; *Answer* ¶11 (admitting paragraph 11 of the Complaint).  Pursuant to the Agreement, Plaintiff provided printing

---

[1]  The Agreement is between Philadelphia Newspapers, Inc.  (as opposed to Philadelphia Newspapers, LLC) and Review.  In paragraph 10 of the Answer, Review admits that the Agreement was entered into on March 31, 2003, but denies that Philadelphia Newspapers, Inc. "is a party to this proceeding."  Answer ¶10.  While not addressing the issue of whether Philadelphia Newspapers, Inc., is one and the same as the Plaintiff since the issue is not raised in the Motion, the Court notes that Philadelphia Newspapers, Inc. is listed on Plaintiff's Voluntary Petition as one of the names which Plaintiff has used in the "last eight (8) years[.]" *See Voluntary Petition, Docket Entry No. 1.*  For purposes of this opinion, the term "Plaintiff" shall hereinafter include Philadelphia Newspapers, Inc. and Philadelphia Newspapers, LLC.

and distribution services for which Review allegedly failed to pay it.  *Complaint* ¶14.  On

August 27, 2009, Plaintiff filed its Complaint alleging a breach of contract claim based on

Review's alleged failure to pay.  According to the Complaint, Review owes Plaintiff for

printing and distribution services in the following amounts:

| | |
|---|---|
| March 2009: | $48,759.41 |
| May 2009: | $190,516.70 |
| June 2009: | $201,671.73 |
| July 2009: | $89,981.88 |
| TOTAL: | $530,929.72 |

*Complaint* ¶15.   According to the Statement of Account which is attached as Exhibit "B"

to the Complaint, the invoices for the aforementioned amounts are dated from March

31, 2009 through July 17, 2009.  *Exhibit B to Complaint.*[2]   Neither the Complaint nor the

Statement of Account indicates when Plaintiff performed the printing and distribution

services to which the invoices pertain.

Review filed its Answer on September 25, 2009.  In it, Review included the

following Ninth Defense:

Defendant is entitled to the contractual right to offset under
Paragraph 7 of the Agreement in the amount of $39,577.00.

---

[2]  The Statement of Account lists the following invoices:

Three invoices, dated March 31, 2009;
Ten invoices, dated May 18, 2009;
Eight invoices, dated May 31, 2009;
Nine invoices, dated June 22, 2009;
Eleven invoices, dated June 30, 2009;
One invoice, dated July 10, 2009; and
Ten invoices dated July 17, 2009.

*Statement of Account, Exhibit B to Complaint.*

*Answer, Ninth Defense.*  In the Answer, Review also included a Counterclaim alleging

that, pursuant to paragraph 7(g) of the Agreement, it is entitled to recover from Plaintiff

"the difference between the applicable guaranteed amount of $90,000 and the

advertising payments made during the contract year."  *Counterclaim* ¶10 *; see also*

*Agreement* ¶ 7(g), *attached as Exhibit A to Complaint.*  Review further alleges that,

pursuant to paragraph 7(i) of the Agreement,  it is contractually entitled to offset the

amount which it is owed under paragraph 7(g) of the Agreement from any amount

which it owes under the Agreement.  *Counterclaim* ¶11.  The paragraphs to which

Review refers in the Agreement, namely paragraphs 7(f), 7(g) and 7(i), provide as

follows:

> (f)      [Philadelphia Newspapers, Inc.] will pay
> [Review] _____ with respect to all other preprinted
> advertising inserts sold by [Philadelphia Newspapers, Inc.]
> into the Review, monthly, in arrears.

> (g)      In the event that the amounts paid to [Review]
> under paragraph 7(f) above (the "Advertising Payments"),
> are less than (i)_____ in the aggregate during the first
> contract year or (ii)_____ during the second contract
> year (each, as applicable, a "Guaranteed Amount"), then
> [Philadelphia Newspapers, Inc.] will pay [Review] an amount
> equal to the difference between the applicable Guaranteed
> Amount and the Advertising Payments made during the
> applicable contract year, promptly, upon receipt of an invoice
> for the same from [Review].  In the event that this
> Agreement is terminated prior to the end of a contract year,
> the Guaranteed Amount shall be pro-rated, on a monthly
> basis.[3]

---

[3]  Plaintiff redacted certain provisions and terms in the copy of the Agreement
which it attached to the Complaint.  According to Plaintiff, the redacted portions "reflect

(continued...)

* * *

> (i)   [Review] and [Philadelphia Newspapers, Inc.]
> shall each have the right to offset against any charges owed
> by it under this Agreement against any charges [owed] to it
> under this Agreement, provided that such charges have been
> billed in accordance with the terms of this Agreement.

*Agreement* ¶7(g) & (i)*, attached as Exhibit A to the Complaint.*

In paragraph 12 of the Counterclaim, Review quotes from "an e-mail dated April

28, 2009" from Perry Corsetti ("Corsetti's e-mail"); he verified the Complaint for Plaintiff.

*Counterclaim* ¶12.  In the e-mail, Corsetti allegedly stated "the insert guarantee owed to

Review was $43,417.00, $39,577 of which accrued pre-petition, between April 1, 2008

and the filing of the Petition." *Id.*  Based on this allegation, Plaintiff contends that the

Ninth Defense and Counterclaim should be dismissed because Review cannot setoff a

pre-prepetition debt (Plaintiff's alleged debt to Review) against a post-petition obligation

(Review's alleged obligation to Plaintiff).  Motion ¶7.

Notably, Review filed a Proof of Claim, dated April 28, 2009, for an unsecured

claim in the amount of $39,577.[4]  Review attached a copy of Corsetti's e-mail to its Proof

of Claim.  According to the e-mail, Corsetti is Plaintiff's Director of Customer Relations.

In its answer to the Motion, Review states that "[i]n this case all obligations arose

---

[3](...continued)
the pricing terms" which constitute "confidential and sensitive commercial information."
*Complaint*, fn. 2.

[4]  The Court takes judicial notice of the Review's Proof of Claim, Claim #59.
Fed.R.Evid. 201; *see Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194,
1200 n. 3 (3d Cir.1991).

post-petition" and that it "had no claim against Philadelphia Newspapers, LLC at the time of the filing of the bankruptcy petition." *Answer of Defendant Review Publishing, L.P. to Philadelphia Newspapers, LLC Motion to Dismiss Review Publishing, L.P's Counterclaim and Ninth Affirmative Defense ("Answer to the Motion")* at 2, 4. Yet, Review has not withdrawn or sought to withdraw its Proof of Claim.

**Discussion**

## I. Jurisdiction

Bankruptcy courts have jurisdiction over "core" and "non-core, related to" proceedings but lack jurisdiction over "non-core, unrelated" proceedings.[5] *Pacific Dunlop Holdings (USA) Inc. v. Exide Holding Europe (In re Exide Technologies)*, 544 F.3d 196, 205 (3d Cir. 2008); *Adams v. Prudential Securities, Inc. (In re Foundation for New Era Philanthropy)*, 201 B.R. 382, 386 (Bankr. E.D. Pa. 1996). In "core" matters, the bankruptcy court has the "power to hear, decide, and enter orders and judgments." *Id.* In "related to" proceedings, the bankruptcy court's authority is more limited. *Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 221 (3d Cir. 2008). The bankruptcy court can hear "related to" proceedings but cannot issue final orders or judgments in such proceedings. Rather, it must submit proposed findings of fact and conclusions of law to the district court which has authority to enter a final order or judgment after conducting a *de novo* review. *See* 28 U.S.C. § 157(c)(1); *Allegheny University of the Health Sciences v. National Union of Hospital and Health Care*

---

[5] While neither party raised the issue of jurisdiction, "courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77-78 (3d Cir. 2003).

*Employees (In re Allegheny Health, Education and Research Foundation),* 383 F.3d 169,

175 (3d Cir. 2004).

Core proceedings include: (i) cases "under" title 11 which means a bankruptcy

case itself; (ii) proceedings "arising under" title 11; and (iii) proceedings "arising in" a

bankruptcy case. *Pacific Dunlop Holdings (USA) Inc.,* 544 F.3d at 205.  In contrast, a

proceeding is related to a bankruptcy case if "the outcome of the proceeding could

conceivably have any effect on the estate being administered in bankruptcy." *Stoe v.

Flaherty,* 436 F.3d 209, 216 (3d Cir.  2006) *(quoting Pacor Inc. v. Higgins,* 743 F.2d 984,

994 (3d Cir.1984), *overruled on other grounds by, Things Remembered, Inc. v. Petrarca,*

516 U.S. 124 (1995)).

The determination of whether claims fall within a bankruptcy court's core

jurisdiction is made on a claim-by-claim basis.  *Mullarkey v. Tamboer (In re Mullarkey)*,

536 F.3d 215, 223 (3d Cir. 2008).  Since Review's answer contains a counterclaim, two

claims are at issue here, namely Plaintiff's claim against Review and Review's

Counterclaim against Plaintiff.   *See Allegheny University of the Health Sciences*, 383

F.3d at 175-77 (examining claims and counterclaim to determine whether bankruptcy

court had core or at least related to jurisdiction over such claims).  Both claims are

based on the terms of the Agreement.

In the Complaint, Debtor alleged that this adversary proceeding is a core

proceeding pursuant to 28 U.S.C. § 157(c)(2)(O).  *See* Complaint ¶5. Review admitted

this allegation in its Answer.  *See* Answer ¶5.  Section 157(c)(2)(O) provides:

(2) Core proceedings include, but are not limited to--

7

\* \* \*

> (O) other proceedings affecting the liquidation of the
> assets of the estate or the adjustment of the debtor-creditor
> or the equity security holder relationship, except personal
> injury tort or wrongful death claims[.]

28 U.S.C. § 157(c)(2)(O).

Whether Debtor's breach of contract claim (which alleges post-petition breaches

of either a pre- or post-petition contract) is a core proceeding is not so clear cut.  In

*Pittsburgh Business Development Corp. V. Braunstein (In re Beard)*, 914 F.2d 434 (3d

Cir. 1990), the Third Circuit addressed the issue of whether a breach of contract action

for rent due under two pre-petition commercial leases between the debtor and a tenant

was a core or non-core proceeding.  *Id.* at 435-36.  To the extent that the claim was for

pre-petition contract damages (meaning rent due before the debtor filed for

bankruptcy), the Third Circuit had no difficulty in concluding that the claim was non-

core.  *Id.* at 443 ("It is clear that to the extent the claim is for pre-petition contract

damages, it is non-core.").  However, to the extent the claim was for post-petition

contract damages (meaning rent due after the debtor filed for bankruptcy), the Third

Circuit observed that the issue was not so easily decided, stating:

> What of post-petition contract damages?  There is a split of
> authority on this point.

*Id.* at 443.  After discussing and distinguishing the case law on point, the Third Circuit

ruled that the breach of contract action before it, involving pre-petition leases allegedly

breached before and after the debtor filed its bankruptcy petition, was a non-core,

related to matter.  *Id.* at 445.  However, the Third Circuit *specifically* refrained from

8

deciding "whether a claim for the breach of a post-petition contract, or a claim only for

the post-petition breach of a contract entered into pre-petition, are core matters." *Id.*. [6]

Importantly, the Third Circuit has yet to rule upon these issues.  Courts which have

addressed these issues have reached divergent results. *Compare Maitland v. Mitchell (In*

*re Harris Pine Mills)*, 44 F.3d 1431 (9th Cir. 1995) (observing that Collier on Bankruptcy

"quotes with approval our holding in *In re Castlerock* [, 781 F.2d 159 (9th Cir. 1986),]

that 'state law and contract claims that do not specifically fall within the enumerated

categories of core proceedings enumerated in 28 U.S.C. §157(b)(2)(B)-(N) are related

proceedings even if they arguably fall within the literal wording of the two catch-all

provisions, section 157(b)(2)(A) and (O)."); *Daewood Motor America, Inc. v. Gulf*

*Insurance Company (In re Daewood Motor America, Inc.)*, 302 B.R. 308, 311-13 (C.D.

Cal. 2003) (concluding that a breach of contract action involving post-petition breach of

a pre-petition contract was a non-core matter); *and West Electronics, Inc. v. National*

*Union Fire Insurance Co. (In re West Electronics, Inc.)*, 1992 WL 184340 (D.N.J. Jan. 9,

1992) (ruling that post-petition breach of a pre-petition contract action was a non-core

proceeding), *with Ben Cooper, Inc. v. The Insurance Company of the State of*

*Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1400 (2d Cir.) (holding that the

---

[6]    In discussing the case law on point, the Third Circuit identified the
characteristics of the action before it that it considered significant in deciding that it
was a non-core proceeding: (i) the action was for rents under a lease which is a
"garden variety contract claim": (ii) the action was not against the bankruptcy estate;
(iii) the contract at issue was a contract for rent and, as such, "only tangentially related
to the bankruptcy estate" as compared to a contract for the sale of an estate assets
which is an integral part of a bankruptcy case; and (iv) the tenant had entered into the
leases with the debtor when it was a "apparently healthy" company. *Id. at 444-45.*

bankruptcy court has core jurisdiction over contract claims under state law when the

contract was entered into post-petition), *certiorari granted and judgment vacated*, 498

U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *opinion reinstated*, 924 F.2d 36 (2d

Cir.1991); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d

165, 168 (1st Cir. 1987) (ruling that a debtor's action to collect a post-petition debt

arising from the sale of the estate's assets, is a core proceeding); *Agri-Concrete*

*Products, Inc. V. Fabcor, Inc. (In re Agri-Concrete Products, Inc.)*, 153 B.R. 673, 677

(Bankr. M.D. Pa. 1993) (concluding that "the better and more pragmatic approach and

the one that gives the most meaning to the statutory authority for core jurisdiction ... is

to follow ... [the] cases holding that actions for breach of contracts entered into post-

petition are core proceedings."). *See also SAI Administrative Claim and Creditor Trust v.*

*Benecke-Kaliko AG (In re SAI Holdings Limited)*, 2009 WL 1616663, at *7 (Bankr. N.D.

Ohio Feb. 27, 2009) (observing that "there is no clear consensus regarding the nature of

a proceeding that involves postpetition breaches of a prepetition contract, some courts

finding such contract disputes to be core while other courts find them to be non-core

proceedings"); *Daewood Motor America, Inc.,* 302 B.R. at 313 (noting that the issue of

whether a breach of contract action involving a postpetition breach of a prepetition

contract is a "core" proceeding is "is far from a clear-cut issue."). Since the parties

agree that this matter is a core proceeding, they have not focused on whether Plaintiff's

claim against Review is for breach of a pre- and/or post-petition contract.[7]

---

[7] In its action, Plaintiff seeks to recover on invoices dated March 31, 2009
through July of 2009. As noted above, the Complaint does not indicate *when* the
(continued...)

The parties have similarly not addressed the issue of whether this Court has "core" or "related to" jurisdiction over Review's Counterclaim against Plaintiff.  This Court observes that Review's Counterclaim and Proof of Claim involve the same transaction.  Moreover, the Court's ruling on the Counterclaim will, in all likelihood, impact the allowance or disallowance of Review's proof of claim which would make it a core proceeding under 28 U.S.C. § 157.

At this juncture of the litigation, the Court finds that it is unnecessary to decide whether Plaintiff's claim against Review and Review's Counterclaim against Plaintiff are core matters.  At a minimum, the Court has related to jurisdiction over the claims at issue.  Since the outcome of both the Plaintiff's claim and Review's Counterclaim could increase or decrease the Debtors' estate, the claims could conceivably have an effect on the estate being administered in this Court.  *See Braunstein,* 914 F.2d at 436 n.1; *Quality Care Medical Equipment Co., Inc. v. Bowen (In re Quality Medical Equipment Co., Inc.)*, 92 B.R. 117, 123 n.6 (Bankr E.D. Pa. 1988). Thus, the claims are, at a minimum, related to matters.

---

[7](...continued)
printing and distribution services for which Plaintiff is seeking to recover were performed.  Therefore, the Court cannot determine, on this record, whether *all* of the services for which Plaintiff is seeking to recover were rendered post-petition. To the extent that Plaintiff is seeking to recover for printing and distribution services which were performed prior to March 31, 2009 when three of the invoices are dated, the services would have been provided pursuant to a pre-petition contract.  However, at the conclusion of the renewal term in March of 2009, the parties agreed to continue their contractual relationship pursuant to the terms of the Agreement for an undetermined period of time.  The parties have not addressed whether they contend that the Agreement constitutes a pre-petition or post-petition contract for the period beginning March 31, 2009.

So long as the Court has "related to" jurisdiction, it can enter an order denying a motion to dismiss because such an order is not final. *See Strong v. Western United Life Assurance Co. (In re Tri-Valley Distributing, Inc.)*, 533 F.3d 1209, 1215 (10th Cir. 2008) (opining that bankruptcy order denying in part and granting in part defendant's motion to dismiss is interlocutory order because it "only partially resolves the adversary proceeding."); *Gazes v. Kesikrodis (In re Ted A. Petras Furs, Inc.)*, 100 F.3d 943, 1996 WL 49255, at *2  (2nd Cir. 1996) (published in westlaw) (holding that bankruptcy court order denying defendants' motion to dismiss adversary proceeding was an interlocutory order); *Helbling v. Josselson (In re Almasri)*, 378 B.R. 550, (Bankr. N.D. Ohio 2007) ("Although this Court is precluded from entering a final order or judgment, the denial of a motion to dismiss is not a final order."); *Patrick v. Dell Financial Services*, 366 B.R. 378, 384-85 (M.D. Pa. 2007) (reasoning that bankruptcy court order granting in part and denying in part motion to dismiss was not a final order because it "did not terminate the litigation on the merits."); *see also Quality Care Medical Equipment Co.,* 92 B.R. at 123 ("By implication ... bankruptcy courts, in non-core matters, may enter only interlocutory orders, absent the consent of all parties.").

Moreover, the Court observes that, with the parties' consent, the bankruptcy court can enter final orders and judgments in "related to" proceedings. *See* 28 U.S.C. § 157(c)(2).  When a plaintiff alleges that a matter is a "core" proceeding, the defendant admits the allegation and neither party objects to jurisdiction, courts have deemed the parties to have consented to the entry of a final order or judgment by the bankruptcy court even if "the cause of action is not actually core." *See West v. Bradley Chevrolet*

12

*(In re Britt)*, 385 B.R. 800, 2007 WL 4867921, at *3-*4 (9th Cir. B.A.P. Nov. 8,
2007)(table, text on westlaw) (concluding that parties consented to the bankruptcy
court's jurisdiction over a noncore proceeding where the appellant pled that the matter
was a core proceeding, the appellee admitted that the allegation and neither party
objected to the bankruptcy court's jurisdiction); *Shubert v. Stranahan (In re Philadelphia
Gear Corporation)*, 2008 WL 2370169, at *5 (Bankr. E.D. Pa. April 28, 2008) (where
Chapter 7 Trustee pled that the adversary proceeding was a core proceeding and the
respondent admitted the allegation, the respondent was deemed to have submitted to
the entry of a final order by the bankruptcy court in a non-core proceeding); *Bohm v.
The Horsley Company (In re Groggel)*, 333 B.R. 261, 268-69 (Bankr. W.D. Pa. 2005)
(concluding, after trial, that the bankruptcy court had jurisdiction in noncore proceeding
to issue final order or judgment because the Chapter 7 Trustee alleged in her complaint
that her claims constituted core matters and the defendant was deemed to have
admitted the allegation because it failed to admit or deny it).  In the Complaint, Plaintiff
alleged that this Court has core jurisdiction over its claim; Review admitted the
allegation.  Therefore, in the absence of an objection by the parties, the Court shall view
their allegations vis-a-vis the Plaintiff's claim as a consent to the entry of a final order or
judgment on it.

Insofar as the Counterclaim, Review failed to comply with Rule 7008(a) of the
Federal Rules of Bankruptcy Procedure which required it to include in the Counterclaim a
"statement that the proceeding is core or non-core and, if non-core, that the pleader
does or does not consent to entry of final orders or judgment by the bankruptcy court."

*See* Fed. R. Bankr. P. 7008(a).  The Court shall require Review to amend its

Counterclaim to satisfy this requirement.

In short, the Court concludes that, even if it merely has related to jurisdiction

over this proceeding, it can resolve and issue an order ruling on the Motion.  Thereafter,

Review shall amend its Counterclaim to include an allegation regarding the Court's

jurisdiction over its claim and the issue of jurisdiction may be further addressed, if

necessary, with the parties' input.

## II.  Standard on Motion to Dismiss

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the court may consider the allegations contained in the pleading, exhibits

attached thereto and matters of public record.  *Pension Benefit Guaranty Corporation v.*

*White Consolidated Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). The court must

accept the factual allegations in the pleading as true, *Erickson v. Pardus,* 551 U.S. 89,

93-94 (2007), and view all reasonable factual inferences in the light most favorable to

the non-moving party, *Angelastro v. Purdential-Bache Securities, Inc.,* 764 F.2d 939, 944

(3d Cir.1985). "Dismissal is warranted if the allegations" of a pleading "are not 'enough

to raise a right to relief above the speculative level … on the assumption that all the

allegations in the [pleadings] are true (even if doubtful in fact).' " *Access Insurance*

*Holdings, Inc. v. Lincoln General Insurance Company,* 2008 WL 859222, at * 1 (E.D. Pa.

March 28, 2008) *(quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)

*(citations omitted)).*  However, even when a dismissal is warranted, the non-movant

should generally be granted the opportunity to amend his or pleading unless the

14

amendment would be inequitable or futile. *Williams-Murray v. Anthropologie, Inc.,* 290

Fed.Appx. 484, 487 (3d Cir.2008); *Miller v. Dutil (In re Total Containment),* 335 B.R.

589, 601 (Bankr. E.D. Pa.2005).

### III. Plaintiff's Argument for Dismissal

Plaintiff contends that Review's Ninth Defense and Counterclaim should be

dismissed because setoffs, which are permitted under limited circumstances under §553

of the Bankruptcy Code, "can only be used where both the debt and obligation are pre-

petition." *Motion* at 5. While Plaintiff is correct about the law on setoff under §553, *see*

*Frank v. Benzel Bretzel Bakery, Inc. (In re Clintondale Mills, Inc.),* 216 B.R. 742, 745

(Bankr. W.D. Pa. 1998), its argument still lacks merit. The Court shall first address

Plaintiff's argument vis-a-vis Review's Counterclaim.

### A. Review's Counterclaim

**Plaintiff's Portrayal of the Counterclaim**
**As a Claim for a Pre-Petition Obligation**

Plaintiff portrays Review's Counterclaim as an action to setoff $39,577 which

accrued pre-petition for advertising inserts.[8] This portrayal is based on Corsetti's e-mail

---

[8] In the Counterclaim, Review alleges that Plaintiff is obligated to indemnify
Review for attorney's fees, expenses and court costs based on its failure to provide an
accurate accounting of money owed. *Counterclaim* ¶15. Review further alleges that
Plaintiff failed to record credits which are due to Review for Plaintiff's "lack of
reasonable commercial quality control standards." *Id.* ¶16. Whether Review is seeking
to offset/recoup its financial obligations to Plaintiff based on these allegations is not
apparent from the Counterclaim. The parties do not address these allegations.
Furthermore, the Court notes that the prayer for relief in Review's Counterclaim does
not refer to offsetting a debt. Rather, as worded, it appears to seek affirmative relief.
However, in its Answer to the Motion, Review asserts that it is entitled to "setoff"

(continued...)

which categorizes $39,577 of the $43,417.00 due to Review for the "insert guarantee"
as due and owing pre-petition.  Whether Plaintiff's alleged debt to Review for advertising
inserts under paragraph 7(g) of the Agreement is a pre-petition or post-petition debt is
determined by law and not by Plaintiff's employee's characterization of the debt.
Moreover, while Corsetti's e-mail refers to the $39,577 figure, the allegations of the
Counterclaim do not limit the recovery sought thereunder to that amount.

In *Avellino & Bienes v. M. Frenville Co., Inc. (In re Frenville)*, 744 F.2d 332, 335-
36 (3d Cir.1984), the Third Circuit held that, in most circumstances, a right to payment,
arises "for bankruptcy purposes at the same time the underlying state law cause of
action accrues." *Jones v.  Chemetron Corpooration*, 212 F.3d 196, 206 (3d Cir.  2000)
(*citing Frenville*).  Frenville remains the law of the Third Circuit.  *Id.*  Under the law of
Pennsylvania, a cause of action for breach of contract arises when the breach occurs.  *In
re Retort*, 300 B.R. 411, 414 (Bankr. W.D. Pa. 2003); *Sadtler v. Jackson-Cross Company*,
402 Pa.Super. 492, 499, 587 A.2d 727, 731 (1991) (applying Pennsylvania law).
Consequently, the issue is when did Plaintiff's alleged breach of the Agreement occur?
Logically, Plaintiff could not have breached the Agreement by failing to make a payment
due thereunder until its obligation to make the payment existed.

Review contends that Plaintiff breached paragraph 7(g) of the Agreement by
failing to make the payment that was due thereunder for the Renewal Term ending on

---

[8](...continued)
Plaintiff's obligation to it against its debt to Plaintiff and never mentions any intent to
seek affirmative relief.  *See Answer to Motion.*

March 30, 2009.  Paragraph 7(g) requires Plaintiff to pay Review a minimum annual amount for "Advertising Payments."  More specifically, it requires Plaintiff to pay Review the difference each contract year between the "Guaranteed Amount" and the payments which Plaintiff has made during the contract year for Advertising Payments."  Agreement, ¶7(g).   While paragraph 7(g) also provides that "in the event that the Agreement is terminated prior to the end of the contract year, the Guaranteed Amount shall be pro-rated, on a monthly basis," *see Agreement* ¶7(g), Plaintiff has not alleged that the Agreement terminated in 2008.  To the contrary, both parties agree that they continued to operate under the terms of the Agreement for an indefinite period of time into 2009.  Since the Agreement did not terminate in 2008, there is no basis for pro-rating the "Guaranteed Amount" under paragraph 7(g).

The amount which Plaintiff owes to Review under paragraph 7(g), if any, for the contract year beginning March 31, 2008 and ending March 30, 2009, was not due until the end of the contract year when it could be calculated.  Indeed, in the event that Plaintiff paid the Guaranteed Amount in Advertising Payments during the contract year (even if it paid the full amount in the last month of the contract year), then no amount would be due and owing under paragraph 7(g).

Therefore, any amount which Plaintiff owed to Review under paragraph 7(g) for the Renewal Term ending on March 30, 2009, was not due until after that date.  Consequently, Plaintiff's obligation to Review under paragraph 7(g) for the aforementioned Renewal Term is a post-petition obligation.

*Setoff Versus Recoupment*

17

Plaintiff contends that Review's Counterclaim is a claim for setoff under §553 of the Bankruptcy Code.  As the Court observed above, Plaintiff correctly argued in its Motion that Review is not entitled to setoff its claim against Plaintiff's claim pursuant to §553 of the Bankruptcy Code because only pre-petition obligations may be setoff against each other.  *See University Medical Center v. Sullivan (In re Medical Center)*, 973 F.2d 1065, 1079 (3d Cir. 1992) ("The doctrine of setoff, as incorporated in Bankruptcy Code section 553, gives a creditor the right "to offset a mutual debt owing by such creditor to the debtor," provided that both debts arose before commencement of the bankruptcy action and are in fact mutual.").  However, the common law doctrine of recoupment may apply where setoff does not.[9]  *See id.* ("The common law doctrine of recoupment provides an exception to setoff in bankruptcy cases.").

Recoupment "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *Id.* (emphasis omitted) *(quoting* 4 COLLIER ON BANKRUPTCY § 553.03,

---

[9]  In its Counterclaim, Review uses the terms "set-off" and "offset" once each. *See Counterclaim* ¶¶ 3,11.  It does not specifically mention recoupment. However, the term "offset" is used in conjunction with both setoff and recoupment.  *See, e.g., Mile4 Automotive, Inc. v. Ocean Petroleum, LLC (In re Mile4 Automotive, Inc.)*, 2009 WL 2986699, at *1 (Bankr. D. Md. Sept. 15, 2009) (italics added) (explaining that "the doctrine of recoupment allows the *offset* of any claim arising from the estate's claim."); *NVF Company v. New Castle County*, 276 B.R. 340, 353 (D. Del. 2002) (italics added) (observing that "although both 'recoupment' and 'set-off' seek to *offset* a defendant's liability, the two concepts are distinguished by the nature of the *offsetting* liability — a defendant's recoupment claim is related to the same transaction as the plaintiff's claim, whereas a defendant's setoff claim is unrelated to the plaintiff's claim."), *aff'd*, 61 Fed. Appx. 778 (3d Cir.  2003).

18

at 553-15-17).  Unlike setoff, recoupment "does not require a mutuality of obligation, but rather countervailing claims or demands arising out of the same transaction under which the initial claim was asserted." *See Long Term Disability Plan of Hoffman-LaRoche, Inc. v. Hiler (In re Hiler)*, 99 B.R. 238, 241 (Bankr.D.N.J.1989).  The distinction between setoff (a doctrine limited by the Bankruptcy Code) and recoupment is whether the claim arises out of the same or different transactions.  *Id.* So long as the creditor's claim arises out of the same transaction as the debtor's claim, the creditor's claim may be offset, based on the doctrine of recoupment, against the debt owed to the debtor without concern for the limitations the Bankruptcy Code places on the setoff doctrine.  *See In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir.1990).

The fact that a contract, such as the Agreement, exists between a debtor and a creditor does not "automatically enable the creditor to effect a recoupment." *University Medical Center*, 973 F.2d at 1080.  Rather, for recoupment to apply, the Third Circuit has explained: "[B]oth debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.* at 1081.

In the instant proceeding, the Agreement contemplates an overall relationship between the parties.  It obligates Review to compensate Plaintiff for printing, insert and delivery services; it also obligates Plaintiff to pay Review a Guaranteed Amount for Advertising Payments in each contract year.  The Agreement also specifically recognizes that each party has the right to offset any "charges owed by it under this Agreement against any charges [owed] to it under this Agreement[.]" Agreement ¶7(i).  Under

19

these circumstances, the Court concludes that the payment obligations at issue arise from the same integrated transaction such that it would be inequitable to allow Plaintiff to enjoy the benefits of the transaction without meeting its obligations. *See Megafoods Stores, Inc. v. Flagstaff Realty Associates (In re Flagstaff Realty Associates)*, 60 F.3d 1031, 1035 (3d Cir. 1995) (holding that tenant's claim for repair costs against the debtor-landlord and debtor-landlord's claim for rent against the tenant arose out of the same transaction and same lease such that "it would be inequitable for the landlord to receive rent without compensating tenant for undertaking repairs."); *In re Communication Dynamics*, 300 B.R. 220 (Bankr. D. Del. 2003) (ruling that "sales credits and equipment purchases" which arose out of parties' agreement were "both part of a single integrated business transaction and were sufficiently related to one another to permit recoupment."); *In re Telephone Warehouse, Inc.*, 259 B.R. 64, 67-68 (Bankr. D. Del. 2001) (opining that the debtor's debt to movant for equipment purchases and movant's obligations to them for commissions were "part of a single integrated business transaction."). Since Plaintiff's Counterclaim satisfies the requirements for recoupment, it shall not be dismissed.

### B.  Review's Ninth Affirmative Defense

In its Ninth Defense, Review alleges that it is "entitled to the contractual right to offset under Paragraph 7 of the Agreement in the amount of $39,577.00."[10]  Answer, Ninth Defense.  For the reasons set forth above with regard to Review's Counterclaim,

---

[10]  Review has not explained the reason that it refers to $39.577 rather than $43,417.00 in its Ninth Defense.  However, as explained above, Plaintiff did not owe any amount under paragraph 7(g) of the Agreement until the conclusion of the Renewal Term on March 30, 2009.

the Court rejects Plaintiff's contention that Review's Ninth Defense should be dismissed because it asserts a right to setoff under §553 of the Bankruptcy Code.

## IV.  Summary

Plaintiff's argument that Review's Ninth Defense and Counterclaim should be dismissed because Review is attempting to setoff a pre-petition obligation against a post-petition obligation is rejected.  Applying the standard of review applicable to motions to dismiss, the Court concludes that the Ninth Defense and Counterclaim state "some viable legal theory," namely the common law doctrine of recoupment. Consequently, an Order shall be issued denying the Motion.  In the Order, the Court shall require Review to amend its Counterclaim to comply with the requirements of Fed. R. Bankr. P. 7008(a).

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: December 17, 2009